# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# CENTRAL DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 17-04106-01-CR-C-SRB |
| LEONARD JEROME WILSON, | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Pending before the Court is defendant Leonard Jerome Wilson's Motion to Suppress Evidence. (Doc. 29). The Government has filed suggestions in opposition. (Doc. 32). No reply brief was filed. The motion is now ripe for consideration. For the reasons that follow, it is recommended that defendant's motion be denied.

## I. Background

On July 14, 2017, Sergeant Chad Bailey of the Camden County Sheriff's Office (CCSO) interviewed a juvenile female (DOB: 09/07/2000) who stated that Mr. Wilson engaged in sexual misconduct with her while on duty as a CCSO deputy. (Doc. 32). The juvenile female further reported that Mr. Wilson became friends with her on social media applications, and sent her a "selfie" taken with a cellular phone depicting the defendant unclothed from the waist up. *Id.* Sergeant Bailey then met with Investigators Randall Ragar and John Pehle of the State Technical Assistance Team (STAT) to inform them of the CCSO internal investigation regarding Mr. Wilson's behavior. *Id.*

On July 17, 2017, CCSO officers interviewed Mr. Wilson who stated that his cell phone was located at his residence with his wife, Maggie Wilson. *Id.* The same day, Investigators Ragar and Pehle accompanied CCSO deputies to Mr. Wilson's residence to retrieve CCSO-issued items and locate electronic devices involved with his alleged sexual misconduct. *Id.* Mrs. Wilson gave officers consent to enter the Wilson home, and directed law enforcement officers to the various locations of CCSO-issued items, including a black patrol bag in the couple's shared bedroom

closet. *Id.* Pursuant to Mrs. Wilson's permission, officers confiscated the CCSO issued items and a Samsung tablet from the residence. *Id.* Detective Jeremiah Burnett searched the confiscated CCSO items in order to re-distribute the property to other officers within the department. *Id.* While searching, Detective Burnett located and seized an HTC cellular phone and SIM card mixed in among the items in the black patrol bag. *Id.* On July 20, 2017, Investigator Pehle applied for and received a Cole County warrant to search the HTC cell phone which revealed images of child pornography and erotica. *Id.*

The fruits of the search lead to a two-count indictment in which Mr. Wilson is charged with one count of Receiving or Distributing Child Pornography in violation of 18 U.S.C. § 2252(a)(2), and one count of Possession of Child Pornography in violation of 18 U.S.C. § 2252(a)(4)(B). (Doc. 1). Mr. Wilson now moves the Court for an order suppressing the child pornography found during the execution of the warrant on the HTC cell phone. (Doc. 29).

The Court held an evidentiary hearing regarding the motion to suppress on January 7, 2019. (Doc. 33). Mr. Wilson was represented by Attorney Shane L. Farrow. The Government was represented by Assistant United States Attorney Ashley Turner. The Government called Investigator Randall Ragar and Detective Jeremiah Burnett as witnesses. The defense called no witnesses to testify.

## II.     Findings of Fact

On the basis of the evidence presented at the evidentiary hearings, the undersigned submits the following proposed findings of fact.

1. On or about July 2017, Mr. Wilson worked for the CCSO as a patrol deputy and had been employed in that capacity for approximately six months. (Tr. at 4:17-22, January 7, 2019).
2. Investigator Randall Ragar has been employed by STAT for approximately three years, and is tasked with assisting law enforcement agencies with crimes against children. (Tr. 15:10-20, January 7, 2019).
3. Investigator Ragar met with CCSO's Sergeant Bailey and Lieutenant Joe Botta on July 17, 2019, and learned about an internal investigation concerning Mr. Wilson's alleged involvement with a juvenile female in Camden County. (Tr. 16:18-25; 17:1-7, January 7, 2019).

4. At the meeting, Sergeant Bailey detailed the information compiled in the CCSO's internal investigation, which included:
    a. An interview with the juvenile female on January 14, 2017 where she stated she encountered Mr. Wilson after riding in a vehicle that was involved in a pursuit. (Tr. 17:8-12; 24:2-6, January 7, 2019). Mr. Wilson responded to the scene as a CCSO deputy, instructed the juvenile to enter his patrol vehicle, and drove her to a remote location where he caressed her thigh and attempted to kiss her multiple times. (Tr. 17:15-17, January 7, 2019). Mr. Wilson returned the juvenile female back to the scene, but they remained in touch via social media applications such as Facebook and Snapchat. (Tr. 17:17-20, January 7, 2019).
    b. A former dispatcher for Camden County made a complaint about Mr. Wilson, and alleged that he attempted to start a sexual relationship with her. (Tr. 17:21-25 – 18:1-2, January 7, 2019). The former dispatcher also believed that Mr. Wilson was engaging in sexual relations with other female juveniles in the county. (Tr. 18:2-4, January 7, 2019).
    c. During the course of the internal investigation, it was discovered that Mr. Wilson facilitated communication with minors through use of electronic devices and cell phones. (Tr. 18:6-9, January 7, 2019). Additionally, CCSO officers learned that Mr. Wilson had a personal cell phone, and another phone with which he conducted "sex stuff." (Tr. 18:12-15, January 7, 2019).
5. Sergeant Bailey interviewed Mr. Wilson regarding the sexual misconduct allegations, and inquired about the location of his cell phone. (Tr. 18:18-25 – 19:1-2, January 7, 2019). Mr. Wilson stated that he did not have his cell phone on him at the time and that it was located at his home. *Id.*
6. On July 17, 2017, Investigator Ragar, Investigator Pehle, Detective Burnett, and CCSO Lieutenant Botta responded to Mr. Wilson's home located at 466 Mulberry Lane in Camdenton, Missouri to collect CCSO issued items and electronic devices potentially associated with sexual misconduct. (Tr. 5:15-25 – 6:1-12, January 7, 2019).
7. The residence was vacant upon the officers' arrival until Mrs. Maggie Wilson, Mr. Wilson's wife, appeared in a black sedan and pulled into the driveway. (Tr. 6:13-19; 7:5-13, January 7, 2019).

8. Mrs. Wilson granted the officers entry into the home via the garage door. (Tr. 7:11-15, January 7, 2019). After officers explained the purpose of their presence, Mrs. Wilson led them around the home and proceeded to identify where the CCSO-issued property and Mr. Wilson's electronic devices were located. (Tr. 6:19-23; 7:20-25 – 8:1-5, January 7, 2019). Officers recovered the following:
   a. Black patrol bag containing miscellaneous CCSO items located in the couple's shared bedroom closet. *Id.*
   b. AR-15 located in the hallway closet. *Id.*
   c. Mr. Wilson's Samsung tablet voluntarily provided by Mrs. Wilson. (Tr. 19:24-25 – 20:1-2).
9. Mrs. Wilson gave officers consent to seize the property she identified. (Tr. 14: 9-14, January 7, 2019).
10. Detective Burnett went through the confiscated property, processed the CCSO issued items, and reissued the property to other CCSO officers. (Tr. 8:14-18, January 7, 2019). While inventorying the black patrol bag, Detective Burnett discovered a black HTC cell phone and SIM card that was not issued by CCSO. (Tr. 8:19-25 – 9:1-17, January 7, 2019; Gov't Exhibits Nos. 1-4).
11. Operating with knowledge that STAT investigators were looking for Mr. Wilson's electronic devices as part of their investigation, Detective Burnett took pictures of the HTC phone, placed it into a static control bag, and delivered it to STAT Investigator Pehle. (Tr. 9:18-25 – 10:1-10; 21:16-22, January 7, 2019; Gov't Exhibits Nos. 1-4).
12. Investigator Pehle applied for and received a Camden County warrant to search the HTC phone on January 20, 2017. (Tr. 22:19-25 – 23:1-6, January 7, 2019).

### III. Discussion

In his motion to suppress, Mr. Wilson does not challenge the constitutionality of the Camden County search warrant issued to ultimately search the contents of the HTC phone. Instead, Mr. Wilson disputes the validity of the warrantless search of his residence that resulted in officers' possession of the HTC phone. The Government seeks to justify the entry and search of 466 Mulberry Lane as constitutionally permissible due to Mrs. Wilson's consent, and the retention of the cell phone during the three-day intermediary period between its confiscation and the issuance of the search warrant due to exigent circumstances.

The Fourth Amendment provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated...." U.S. Const. amend. IV. As made clear in the Fourth Amendment, however, the Constitution does not forbid all searches and seizures, but only unreasonable searches and seizures. *Elkins v. United States*, 364 U.S. 206, 222 (1960). In many search and seizure scenarios – particularly where a residence is involved – the question of legal authority (as well as reasonableness) is presumptively satisfied by a judicially-issued warrant. In this case, law enforcement officers did not have a warrant to enter or search Mr. Wilson's residence at 466 Mulberry Lane in Camdenton, Missouri. To that end, the Supreme Court has cautioned:

> [S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment – subject only to a few specifically established and well-delineated exceptions.

*Arizona v. Gant*, 556 U.S. 332, 338 (2009) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)).

One specifically established and well-delineated exception is consent. *United States v. Almeida-Perez*, 549 F.3d 1162, 1169 (8th Cir. 2008). Law enforcement "may enter and search a defendant's house with the voluntarily given consent of the defendant or with the consent of a third party who shares 'common authority over the premises or effects' to be searched." *Id.* (quoting *United States v. Matlock*, 415 U.S. 218, 222 (1973). A third-party has "common authority" over a premises where he or she has "mutual use, and joint access or control" of the place being searched. *United States v. Amratiel,* 622 F.3d 914, 916 (8th Cir. 2010) (quoting *Matlock*, 415 U.S. at 171 n.7). In short, "any co-inhabitant [of a residence] has the right to permit inspection in his [or her] own right." *Matlock*, 415 U.S. at 171 n.7. In order for defendant to object to third-party consent given by an individual that shares common authority over the premises, the defendant must be present. *Almeida-Perez,* 549 F.3d at 1169-70 (citing *Georgia v. Randolph,* 547 U.S. 103, 122-23 (2006).

In the instant case, it is clear, and frankly undisputed, that Mrs. Wilson possessed equal authority over the home located at 466 Mulberry Lane to permit a search of its premises. Mrs. Wilson is the defendant's spouse, she is a co-habitant of the home, and she was able to grant officers access into the home. Furthermore, she demonstrated familiarity with the layout and contents inside of the residence by leading officers to the various CCSO issued property, including the black patrol bag that held the HTC phone. Mr. Wilson was not present at the time of the search, and thus could not properly object to negate the consent that Mrs. Wilson gave. As such, his later

request for the return of his cell phone is irrelevant to this analysis. The consent Mrs. Wilson gave officers to enter, search, and remove property from the premises constitutes an accepted exception to the Fourth Amendment's ban on unreasonable searches and seizures.

Lastly, probable cause based on the CCSO's internal investigation regarding Mr. Wilson's sexual misconduct gave officers probable cause to seize the HTC phone until a search warrant was issued. "Where law enforcement authorities have probable cause to believe that a container holds contraband or evidence of a crime, but have not secured a warrant, the Court has interpreted the [Fourth] amendment to permit seizure of the property, pending issuance of a warrant to examine its contents, if the exigencies of the circumstances demand it or some other recognized exception to the warrant requirement is present." *United States v. Clutter*, 674 F.3d 980, 985 (8th Cir. 2012) (quoting *United States v. Place*, 462 U.S. 696, 701 (1983)). Probable cause exists where there "is a fair probability that contraband or evidence of a crime will be found in a particular place" and is determined by the totality of the circumstances. *United States v. Mohammed Ahmed Kattaria*, 553 F.3d 1171, 1175 (8th Cir. 2009) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)); *United States v. Grant*, 490 F.3d 627, 632 (8th Cir. 2007) (internal citations omitted).

Under the totality of the circumstances approach, officers had sufficient probable cause to believe the HTC phone Detective Burnett discovered in the black patrol bag contained evidence of a crime. The juvenile female interviewed by Sergeant Bailey disclosed that she communicated with Mr. Wilson on Facebook and SnapChat, which are social media applications frequently accessed on a cell phone. Additionally, the juvenile female reported receiving a "selfie" of Mr. Wilson that he likely took on a cell phone. These facts, in addition to the information Sergeant Bailey received regarding Mr. Wilson's use of electronic devices and cell phones to facilitate communication with minors, constituted probable cause. Given the inherent nature of a cell phone and how quickly evidence contained therein could be destroyed, exigent circumstances warranted seizure of the HTC cell phone until a warrant was obtained three days after its discovery.

### IV. <u>Conclusion</u>

For the reasons stated above, the Court concludes that Mr. Wilson's contentions regarding suppression of evidence in this case are without merit, and the Motion to Suppress Evidence should be denied.

Accordingly, IT IS THEREFORE RECOMMENDED that the Court, after making an independent review of the record and applicable law, enter an order DENYING defendant Leonard Jerome Wilson's motion to suppress. (Doc. 29).

Counsel are reminded that each party has fourteen (14) days from the date of receipt of a copy of this Report and Recommendation within which to file and serve objections. A failure to file and serve exceptions by this date shall bar an attack on appeal of the factual findings in the Report and Recommendation which are accepted or adopted by the district judge, except on the grounds of plain error or manifest injustice.

Dated this 17th day of January, 2019, at Jefferson City, Missouri.

*Willie J. Epps, Jr.*
Willie J. Epps, Jr.
United States Magistrate Judge